Gonzalez v. GEICO. Mr. Mueller. Good morning, Chief Judge. May it please the Court. My name is William Mueller. Sitting with me at Council Table is Elliot Kula, and we represent the appellants in this appeal. We're back before this Court following the determination of coverage liability under GEICO's insurance policy, which made GEICO liable in part for the injuries that the Benner family suffered, including, most specifically to our case, catastrophic injuries to Devin Benner. Rearman, we went back before the magistrate, same magistrate that entered the order. I think I just told you we know what the background is. Apologize. We think the facts here and our expert testimony, which was disregarded, present an issue of fact on GEICO's bad faith conduct in this case. So what, so am I understanding right, the question here that GEICO was looking into was whether this golf cart had the capacity to be driven legally and safely on the roads. That's what they say they were looking into? It appears that was the case, Your Honor. Okay. Explain to me how, how what they did here rises to the level of bad faith. Yeah, just start, just start there. Sure. We have a lot of Florida cases, a lot of recent cases from this court, illuminating the standard for how we're going to evaluate bad faith conduct. The most recent word out of the Florida Supreme Court, the Harvey decision, says the primary inquiry is did the insurer act with the requisite haste and speed, haste and care, haste and competency that the insured would have had they been facing the possibility of the excess judgment. So we're looking at two things, speed, competency. Let's take a look at what GEICO did in its investigation of coverage and what it could have done better. And that, its duty, before you get into that, it is one of what? You say, yes, speed and care, but am I right? Yeah. That's, the Florida courts describe this as a fiduciary duty, right? Absolutely. A fiduciary duty. And we're going to measure whether they met that fiduciary duty, whether they breached that duty based on the quality of the work that they do, the speed of the work they do, to the extent that it could have. Are they looking out for the insured or the policyholder, or are they looking out for themselves? They're supposed to be looking out for the policy. I mean, that's right, but that's, that's the concern. That's the inquiry. That's the concern. Exactly, exactly. And here, here we have a coverage investigation. Naturally, that's going to look out for the insurer versus the insured. And what happened with this coverage investigation was that it was unduly delayed. It took 68 days for Geico's adjuster, her supervisors, to come to the conclusion that this golf cart was not insured under the policy. And in a single day, when they turned over their findings to their in-house counsel for the first time, 69 days into the proceedings, in-house counsel took a look at this and said, you guys got it wrong. There's coverage in this case. I know that from these two Florida cases, which are the same cases this court cited in our prior appeal. So how long are you saying it should have taken them? Because from my understanding, there's no set amount of time or deadline imposed on the insurance companies. And the record shows, as the chief mentioned, or I believe Judge Brasher, we had an issue with the golf cart. We had an issue with whether or not this driver was properly behind the wheel and covered. And so there were a lot of other issues. The sister, I believe, who owned the golf cart was hesitant about going on the record. So how long are you saying that it should have taken them? The answer, I think, is twofold. First, there's no bright line rule. I can't stand up here and say this is the day that they should have done it. We know a few important dates here. The date that the lawsuit was filed against Geico's insured Ms. Acuna. That date's important because that's what started the process of the excess judgment. In a case here where the insured's liability is clear and the damages are catastrophic, the filing of that lawsuit is a certain precursor to an excess judgment to Geico's insured. The failure is not just one in speed, though. They consulted with in-house counsel on day 69 of the process. Geico is telling us, well, this was a very complex coverage determination. That's why it took so long, plus some of these delays that happened. If the issue of coverage was so complex, a reasonable jury can conclude that they should have consulted with their in-house legal counsel at the start of the process, not at the very end of the process. That would have circumscribed the coverage investigation. It would have sped up the process and it would have critically possibly prevented the filing of the lawsuit against their insured. That's the window of time we're looking for here. Attorney Silva, who represented Devin Benner, Devin Benner's mother, they filed affidavits that said, look, window of opportunity here was before we filed that lawsuit. For our purposes, for any bad faith purposes, that's the critical window of time. We're looking to see if Geico fulfilled its obligations to the insured. Of course, an insurer can take the measures necessary to determine its own coverage, but Florida case law is clear. The LaFerrette case, State Farm v. LaFerrette, Florida Supreme Court case says they have to do so in a manner that limits the prejudice to the insured. What does that mean for purposes of this case? That means they can do more than one thing at once. They can investigate coverage while setting out negotiations with the claimants to see if they would be open to settling with the policy limits. That's the whole reason we have reservation of rights letters in these cases. Here, Geico issued seven of them saying, look, we're taking some measures to investigate this claim, but we're reserving our rights to pull out if there's no coverage here. They issued about five or six of these letters, but they took no commensurate action in trying to settle the case. They didn't start negotiations until after the coverage determination was made, after day 70 of the process. That's far too long, and it's far too long because the lawsuit was already filed against their insured. The cases recognize this. We have two cases from this court in the past year that recognize it. Kinsdale, which was reversing a summary judgment in favor of insurer, and Martinez, which was actually an opinion that affirmed a summary judgment in favor of insured. But Martinez is a great example because it's instructive in its distinctions. In that case, the insurer operated on parallel tracks. It investigated a complex coverage issue, an SUV that wasn't named on the policy, that had just been purchased that day, so it was difficult to ascertain what vehicle it was and who it belonged to. While Geico, who was the insurer in that case, investigated that complex coverage question, they also worked to settling the claim with the insured. They reached out. They said, look, we're setting aside the $10,000 policy limits that we have for this catastrophic injury. We're going to set up a global settlement conference with the purview so that we are still investigating coverage. So they may not be there at the end of the day, but we're going to take these immediate steps necessary because we see that it is just under these circumstances. That goes back to a few of the doctrines from every case. And your point is that there's at least enough evidence for this to go to a jury. That's it. I'm not trying to win the case here. I'm not trying to. This is not a closing argument, although I may appear as though I'm just saying this is enough for me. Although that might be your normal inclination is to give me the closing argument, right? That's right. But all we need is enough to go to a reasonable jury. And I think there's more than enough red flags in this file. There's also the issue with the global settlement conference. This is sort of secondary to the complex coverage investigation. So it goes back to the point, what was GEICO doing while they were investigating coverage? In terms of settling the case, they did very little. They said there were about five claimants in total that would possibly make a claim against this insurance. Two of those claimants, they didn't realize, didn't actually have a claim against them until that global settlement conference. So that was on day 80 of the process. They could have picked up the phone and called the guardians of the children and said, look, are you intending on making a claim? Yes or no, that would have eliminated several of the claimants prior to the settlement conference. Why is that important? Because if we had eliminated the non-claimants from the potential claimant pool, all that was left was Devin and his two siblings. His two siblings had soft tissue injuries. They clearly weren't going to exceed the $10,000 cap that Devin was because he suffered traumatic brain injury, paralysis, serious injuries, catastrophic injuries, as the case law recognizes. So the math would have worked out a lot simpler and thus speedier and more precise had Geico just made a few phone calls. And in fact, they consulted with the guardians of some of the children, but they only spoke to them about the facets of the golf cart, which were ultimately rendered immaterial when they went to their in-house counsel. Can I ask you a question? So there's a lot going on here with your argument, but at the end of the day, it seems like you need us to say, to establish some rule and say insurance companies must do X to get summary judgment on a claim like this, right? What is X? Like what is it that you think we're supposed to say insurance companies have to do under Florida law? Is it that we have to say they have to pursue like a two-track investigation? Like what is it that they have to do? I think the court could reaffirm the Laforet principle, which is investigate the coverage question diligently while at the same time minimizing prejudice to their insured. That's a quote from the Laforet case. But you see that, but see, if that's the standard, that just seems like something you're going to have to apply on a case-by-case basis. And if that's the standard, I just, I mean, were they not diligent here in the sense that they, I mean, they weren't, it didn't seem like they were, it was like they weren't investigating, right? I mean, it seemed like they were investigating. They were investigating whether the golf cart was legally and safely, could be driven on the road. You know, some of the delay here was because they just couldn't get access to the golf cart, which is the crash vehicle. Like, I guess, where are we supposed to say, look, this was diligent enough versus where are we supposed to say like a jury is supposed to find that out? To your general question, it does seem like these cases are truly in the eye of the beholder. And I don't know if there is a way to draw a bright line across all of these cases to say if it's on this side of the line, it's an experiment. If it's on this side of the line, it's a rehearsal. In this case, I can tell you the totality of these circumstances, the speed that we're looking at is the speed in which Geico protected the interest of its insured. At one point, did that occur? It didn't occur until after the coverage. The problem about the golf cart issue, it seems to me, is a jury could look at this and say, they're not looking out for the insured. They're trying to find a way out of coverage. And at the end of the day, the decision is made that coverage is provided based just on the fact that it's a golf cart and that the policy does not define auto. And that means it could be it's ambiguous and it could be plausibly interpreted to cover of golf cart. And that's why the attorney, right, in-house attorney says, this is covered, right? Precisely right, Chief Judge. I mean, the attorney in this court came to the same conclusion. There was only three facts of the golf cart that mattered. Did it have four wheels? Could it carry passengers? And was it at the start of that? A jury could look at all the other things that the judges are looking at and saying, they're not looking out for the insured. Absolutely right, Chief Judge. And I see I'm out of time. I'll save the rest of it. You're on our time. Any other questions? Any other? Okay. Thank you. Mr. Duke. Thank you, Your Honor. Good morning, Your Honors. I'm Adam Duke on behalf of Geico, Maine Police Court. Your Honors, we believe that this summary judgment should be affirmed and that there is not sufficient evidence in this record from which a reasonable jury could base a verdict of bad faith. I want to kind of start where I left off. I mean, that's the problem I'm having. Yes, Your Honor. I'm happy to. And I would emphasize the similarities between this case and the recent published opinion from this court in the Martinez v. Geico case, which I argued just about a year ago here. And we said even a two-week delay could show some negligence. Well, what Martinez emphasizes when there was a coverage issue in that case, which was much simpler than the one in this case. In that case, it was only about when the vehicle was purchased. This really is pretty simple. Well, Your Honor, the trial court in this case issued a 44-page opinion finding that there was no coverage. Yeah, I'm thinking that might need to be reversed. And the fact that it was 44 pages doesn't hold much sway with me. Well, Your Honor, my point is... Previous opinion, right? Where a federal district judge said, actually, I've looked at all the evidence and there was no... Geico didn't have to cover this. Correct. That's my point, Judge Brasher. And the point is about that. It's not that that court was right. We know that this court has subsequently reversed it. But the point is that the fact that a federal district judge could issue an opinion, finding that there was no coverage under these facts, shows that it was a reasonable view of the facts of this case. That reasonable minds could look at this and decide, maybe there's coverage here, maybe there's not. Or at least that it's a closed call. But to the Chief's point then, it seems you're conceding that you all were focused on the interests of Geico and not the insured. Your Honor, any time there's an investigation into coverage, that is inherently an issue in which the insurance company is investigating its own interests rather than the insured. And that is why that can't be the standard when it comes to a coverage investigation. To state that the standard is that the insurance company must always place its insured's interest over its own would mean that they wouldn't have a right to investigate coverage. Because coverage is always adverse to the insured. And what this court said in the company has a right. It must be allowed an opportunity to resolve the coverage dispute. Sure. But it also, I mean, look, part of the problem here, Mr. Duke, is your client does business in Florida where it looks like the decisional law about bad faith is really bad for you. And what creates a jury issue about whether you're looking out for the policyholder as opposed to yourself or your company is, you know, it looks like it's pretty easy to get to a jury on that. What am I missing? Well, this court didn't think so in Martinez, which I would emphasize again, the facts of that case are incredibly similar. And if anything, you know, worse for Geico in the Martinez case than they are here, because that coverage issue was so much simpler. It was the ownership of the vehicle is something you just need to find the title. This ended up being very simple. Your Honor, again, I would emphasize that the district court in its, you know, coverage opinion didn't think so when it found that there was coverage in favor of, you know, found the district court who was wrong. Yes. Precisely the same reason that in-house counsel had said that this was covered. But can we say that they were so wrong that it was just completely obvious that this is just such a clear call that Geico didn't have an opportunity. The fact that the district court who was wrong thought that in terms of whether it's a jury issue or not, when you take these facts. I mean, you want to talk a lot about the district court's erroneous opinion, but the real question for us is, is summary judgment appropriate here? Yes, Your Honor, and let me address that. The issue is not whether, the issue really isn't who was right or wrong about the coverage issue. The issue is that an insurance company, we know under the case law, has a right to do an investigation into coverage. A coverage investigation is always going to be adverse to the insured. Right, but making that, yeah, go ahead. But in making that determination, and again, recognizing there's no set time limit for when the insurance company needs to make that decision. It took 69 days, and then the next day, your attorney says there's coverage, and then there's the settlement process. The next day after reviewing the information that was learned from that 69-day coverage investigation, the issue with the coverage, the length of the coverage investigation. Yeah, the only thing that it needed to know were precisely the things that your friend on the other side said. It's a golf cart with four Your Honor, I disagree, and as Judge Brasher said, the issue was, is this vehicle legally drivable and safe on the roads, which the 11th Circuit, in its opinion. That wasn't the basis, though, for the coverage determination. It wasn't analyzed by this court in overturning the prior coverage decision. The appellate court, the opinion from this case, discusses that exact issue. And he talks about the facts. That was what they were looking into, or what they said that they were looking into. Correct, Your Honor. That's what GEICO was looking into, and this court looked at those same facts when it made its coverage opinion in overturning the district court. Those facts were key facts to look at. So the fact that the coverage opinion was made very quickly after those facts were learned is one thing, but those facts had to be ascertained by inspecting this vehicle, which was a police impound lot. And the record is replete that GEICO was diligently attempting to seek out these facts, calling people. I thought what we said was that what mattered was not whether the golf cart could have been driven legally on the road, but whether golf carts in general could. What I believe that the 11th Circuit opinion talked about the statute regarding golf carts, whether they're drivable on the roads, and even had said something along the lines of any issues that... Not about this particular golf cart, whether golf carts in general, right? I believe, Your Honor, the 11th Circuit opinion discussed that any defects that prevented this particular golf cart from being driven legally on the roads could have been remedied by placing this... Yeah, right. So it didn't really matter whether this particular one at that time could have been. Your Honor... The deficiencies could be corrected. You know, the point was fraud or law allows golf carts, as a general rule, to be driven on the roads, right? That's what the reasoning was, right? If they meet certain requirements. And so the question is whether or not they qualify as an auto under the policy. And I would just suggest that it's not such a clear-cut issue when there are differing opinions and different lawyers and different judges who look at this and analyze it and come to different conclusions. And that's all... That's the point. The point is not who is right or wrong. That's never the standard in a bad faith case. Anytime we have a bad faith case, there's going to be some element of the insurance company... What was your client doing to try to minimize the exposure to the policyholder while it's investigating what ends up being a very simple determination 69 days later? It was investigating as well, you know, simultaneously the injuries and what they about the claimants making the claim. And I want to correct some misstatements. Actually settle it though? Once it made the coverage decision, it immediately sent out a letter offering the money. But prior to that, it did not. It wasn't doing anything in the interim. GEICO did not make any offers prior to making... Yeah, it's not doing anything to protect the policyholder. It's just trying to determine whether it, you know, it has to protect the policyholder. Your Honor, it did not make an offer prior to... That's the way a jury could look at under what under Florida law looks like. Very favorable law for policyholders. Your Honor, I want to address this because this point goes to exactly why this shouldn't be a jury question. I think your Honor's point is exactly why this is appropriate for summary judgment and not going to a jury. Because I don't... I think a jury could look at this and say they were looking out for their own interests by investigating coverage and find bad faith. And that would be erroneous under Florida law because Florida law gives an insurance company the right to conduct an coverage investigation, which is always going to be adverse to the  That seems like what they're saying. They seem to be saying that Florida law has this bright line rule requiring you to like offer settlements as you're doing the investigation. Has any court ever in Florida said that that's like a rule under Florida law? Absolutely not. And that is exactly my point. My point is, this is the danger. This is the danger that a jury could look at this and say, well, you're just looking out for yourself by investigating coverage and find bad faith. And that is not the law. The law is that the insurance company has the right to do a coverage investigation, which is adverse to its insurer. I don't hear them saying, though, that you don't have a right to do a coverage investigation. The problem, as I understand it, is they're saying you're not doing anything, though, to protect the policyholder. You can do both, can't you? You can't, because as soon as you offer the money, you have the right to do both. I don't believe you have a requirement to offer a policy before concluding whether or not there's coverage under the policy because it puts an insurance company in an impossible position where they are required to offer money under their policy that isn't owed before they've determined whether it's owed or not. But again, I'm not sure. I don't read their position to be that way either. I don't think we're here challenging whether or not an insurance company has the right to investigate coverage. I understand, for me, the primary issue to be how long should that take, especially given the facts already known to GEICO and how quickly, arguably, the insurance company could have obtained those facts to move more expeditiously. Yes, Your Honor, I agree with that. And I think the facts and the record in this case are extremely clear that GEICO was diligently attempting to ascertain those facts. That this vehicle was in the police impound lot. It was inaccessible. GEICO was making phone calls. GEICO was sending people out in person multiple times to try to meet with the detective, to try to meet with witnesses or the parties involved. And I want to read from the Martinez v. GEICO case that published opinion from September from this court. An insurer has an opportunity to resolve the coverage dispute. Otherwise, an insurer would be placed in the illogical and unfair position of either paying what it believes to be an uncovered claim or being in jeopardy of a bad faith judgment for failure to pay a claim, citing to the Florida to the insured to investigate. Yeah, the last sentence I think of that paragraph says making its settlement tender even before receiving documentation regarding Guevara's ownership of the truck. So again, suggesting that there was there were other steps that GEICO could have taken to minimize exposure. That's what happened in Martinez, that they made the offer before the you know, concluded their coverage investigation. But I think if you look at the quote right before it in the Higgins case, it's not a better case. I don't think that they're required to do it. I can't be. I mean, this is let's pin this down. This is the court's decision. If that's the law that an insurance company is required to offer its policy limits to attempt to settle a claim before concluding its coverage investigation, even though the amount of time it's taking is being reasonable, even though it's taking reasonable steps to investigate coverage, even though it's doing what it can to figure out those facts, if they have to offer their policy limits anyway, even before that reasonable time to conclude a coverage investigation is concluded, then you're ruling that an insurance company can't do its coverage investigation. It has to pay its money out without knowing whether it's actually owed under the policy or face a bad faith judgment of twenty something million dollars. And that can't be the law. And it isn't the law. Higgins versus State Farm from the Florida Supreme Court. This case's decision in Martinez versus Geico says that's not the law. You have the right to do a reasonable coverage investigation as long as you're reasonable, as long as you're diligent. You do not have to offer your policy limits until that time has passed that you've, you know. Yeah. Can you just nail down the question about whether this investigation was reasonable and be in specifically about whether the things that they were invest, just go back to one of Chief Pryor's questions, whether the things that they were investigating, it was reasonable for them to investigate those things? Because I think you would agree, like, if they were investigating, like, the color of the golf cart or something like that, like, that would be unreasonable. Sure. It wouldn't make any sense. So could you just explain that? Yes. And so we know what the 11th, you know, what this court ultimately ruled about the coverage issue. But my point on that is that it is not a clear cut issue. We had the Martin case from the Florida Supreme Court talking about. How about this? By March 30, Delaney knew the golf cart had a windshield, turned signals, head and taillights, and was gas operated, right? I believe it turned out that it didn't have the taillights. I think that information had been given to it. But I think when we inspected, if I, maybe I'm mistaken, but I believe the taillights were actually missing. Everything else you admit to? I believe, I admit that that was told verbally to her. We didn't have pictures of it. We couldn't confirm. Despite that, she wants photos. Correct. On April 11th, she makes an appointment to view the golf cart for May 3rd. Real speed there. Your Honor, I mean, this is a police impound lot. I don't know that they were given an earlier date. I mean, I know that she was speaking to the detective. More than a month. There was an SIU. I mean, you've told me, told all these characteristics about the golf cart. But, oh, well, we want to see photos. Oh, we want to go see it in person. I mean, couldn't a jury look at that and say? I don't believe so, Your Honor. That you're not acting in the insured's best interest here? I see that I'm running out of time. I want to make one very quick last point before my time expires, just with regard to the other issue that we haven't talked about, the Global Settlement Conference. I want to emphasize that there were other claimants. And it was incredibly important, and in particular, Nancy Gonzalez. This didn't get a lot of discussion. Nancy Gonzalez had a knee surgery because of this accident. She had a real claim, and she didn't not make a claim. What happened is she showed up to the Global Settlement Conference and decided that she would forgo her claim because she had UIM coverage. This is all in the record. And wasn't making a claim on that date. So it was necessary for GEICO to conduct this global. There was no other way for it to succeed. It could not have simply tendered the per person limits to Devin Benar. And that's the Martinez case, the Valley case, the Montanez case that I would emphasize. And I'll just end on that, Your Honors. Thank you. Thank you. Mr. Miller, you take four minutes. Thank you, Chief Judge. There is a bit of unwarranted extrapolation of our argument. We are not asking for any bright rule. We're not asking for a bright line rule that an insurer has to tender the full coverage. Your Honor, are we really obligated to say what it would do, what the bright line rule would be to protect an insured? I mean, the insurance company. The only thing we're, I mean, we have to decide whether under Florida law, this is enough for a jury. That's correct. And there are very few rules in place here. There are a few doctrines. The ticking financial time. What about his point about the global settlement conference? I think. You think that's evidence actually a bad faith? I actually do, Your Honor. I think Mr. Duke just said, well, we had to have the global settlement conference to figure out that Ms. Gonzalez wasn't intending to file a claim. Picking up the phone and asking her before the conference would have accomplished the same thing. I think a reasonable juror can conclude that. If I may, I want to read it. I mean, look, the real question here is whether GEICO had a reasonable opportunity to settle it. If it didn't have a reasonable opportunity, then it can't be liable for bad faith, right? That's correct, Your Honor. And that goes back to the affidavits of Mr. Silva, Devin Bender's mother. The credibility that was owed to those affidavits that frankly was not given by the magistrate's report and recommendation when it called those affidavits self-serving. It goes to Mr. Silva's statements after the global settlement conference fell through when he said, look, this is untimely at this point. That's consistent with the statements in his affidavit corroborating, adding a little bit more credibility to those statements as well. And if I may, I want to go back to Martinez because I do think Martinez is truly instructive in its distinctions here. Here's the quote I like from Martinez. And this is part of Judge Lagoa's analysis in the case. She says here, look, GEICO pursued its investigation with the requisite diligence and thoroughness. We could argue GEICO did the same here. It investigated the coverage investigation possibly. There were a few red flags. On day 30, they had the conversation. They knew the material facets of the golf cart. There's some issues. I could take a shoot, but let's just say for the sake of argument, that's true. The reason Judge Lagoa didn't find bad faith there was because GEICO took efforts to settle the liability claim in the face of the coverage dispute, which undercut a finding of bad faith by promptly making a settlement offer even when coverage remained uncertain. I'm not suggesting that they had to make a settlement offer, but they had to take steps to protect the interests of their insured. That goes back to the Laferrette case. In some circumstances, that may warrant a full settlement offer tender. That was the case in Martinez. Perhaps in other cases, that's not warranted here, but they have to take real efforts to protect not their interests, but their insured's interests during this critical process, especially when we're facing a ticking financial time bomb. Devin's injuries were catastrophic. The liability of GEICO's insured, Ms. Acuna, was clear. There was no doubt about that, that she was at fault for the accident. I mean, the weird thing about this, I've got to tell you from my own perspective about Florida law and how favorable it is to insureds is with the catastrophic injuries, it just seems to me hard to really understand what difference it really ended up making. Can you explain that to me, kind of what the thinking is of the policy of Florida law about that? I mean, this ended up settling, right? The policy limits are tendered for it. That's where this was going all along. What really difference does it make that it takes maybe a month longer than it should have? I think the reality for when there are catastrophic injuries, and at least in cases where there's not a fatality, there are medical bills that are stacking up immediately from the start of the accident, right? There may be a pressing need to get money in the door to be able to pay out medical bills. They're going to be far in excess of what the policy limits are as they stack up. What difference does it make? And I think that takes into account the assets of the insured. We have a lot of individuals in Florida that may not have as many assets per person as other states, and so it's taking into account the possibility that . . . I think one of the things Chief Judge Pryor is getting to is just . . . I get your point about how the affidavits have to be viewed from the lawyer, but had GEICO offered the policy limits a month earlier, like they're the same policy limits they offered. You know, this isn't one of these cases where you can actually point to something and say, like, well . . . I mean, I think where you can point to something and say, like, well, we learned something different in between those months, so it would have made sense for them to settle before, but then it didn't make sense for them to settle later. Like, what's the rationale for that? Well, and I think, Your Honor, that would be testimony to be explored at trial, in front of a jury. If they want to impeach the statements that Attorney Silva and Devin Benner's mother made, you can explore that rationale. Did Attorney Silva offer any reasoning for saying that it would have settled for $10,000 had the settlement come, you know, a month earlier? Well, we're talking three months earlier, but it was disposably, I think, before the lawsuit was filed against Miss Acuna. Is there something in the law that speaks to futility in terms of good faith and due diligence? I don't think so, Your Honor. I think to the opposite. I think the Florida case law stresses the importance of making the tender. Yeah, yeah. I think you're right about that. I think the Florida case law, again, I've been saying all along, it doesn't make sense to me. Florida case law doesn't make sense to me. The policy behind it. Understood, Your Honor. Well, I'm out of time. Other than to maybe enrich the trial bar, I don't know. But it is what it is. I understand, Chief Judge. And thank you for allowing me to go a little bit over. I appreciate the time this morning. I'd ask the Court reverse the summary of judgment for the reasons we've explained, as well as the disregard of our expert testimony, which we didn't quite get to today, but factors into this Court's analysis as well. Thank you very much. Thank you, Mr. Miller. It's helpful. We're going to move to our second case.